*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1248**

State of Minnesota,
Respondent,

vs.

Misti Dawn Nelson,
Appellant.

**Filed July 6, 2026**
**Affirmed**
**Johnson, Judge**

Hennepin County District Court
File No. 27-CR-24-233

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Rana S. Alexander, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Kathryn J. Lockwood, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Bond, Judge; and Chutich, Judge.[*]

---

[*]Retired justice of the Minnesota Supreme Court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn. Stat. § 2.724, subd. 3 (2024).

**JOHNSON**, Judge

Misti Dawn Nelson pleaded guilty to second-degree unintentional murder based on her admission that she shot and killed a man while he was assaulting her sister. At sentencing, the district court denied Nelson's motion for a downward dispositional departure but ordered a downward durational departure. We conclude that the district court did not abuse its discretion in sentencing Nelson. Therefore, we affirm.

## FACTS

In the early morning hours of December 30, 2023, Nelson was involved in a brawl at a convenience store in Minneapolis. Nelson had finished her late-night work shift and was waiting for her sister to finish work at the convenience store so that they could travel together to the home they shared. At approximately 3:45 a.m., two women, A.C. and J.W., exited a parked vehicle and entered the store, whereupon A.C. physically attacked a man inside the store. The incident quickly developed into a brawl involving at least ten persons. K.M.J. exited the parked vehicle from which A.C. and J.W. had emerged and joined the brawl. Nelson removed a handgun from her clothing and attempted to strike A.C. or J.W. with it. A.C. punched Nelson in the face, causing Nelson to fall backward out the front door, onto the ground. A short time later, while Nelson was standing outside the store, she saw through the glass door that her sister was pinned into a corner near the door. Nelson saw A.C. hit her sister several times and saw K.M.J. punch her sister in the face. Nelson opened the front door and fired her handgun at K.M.J. When K.M.J. began to approach

Nelson, she shot him again. K.M.J. later died from gunshot wounds inflicted by Nelson. A few hours later, Nelson turned herself in to law enforcement.

In January 2024, the state charged Nelson with second-degree unintentional murder, in violation of Minn. Stat. § 609.19, subd. 2(1) (2022). At a pre-trial hearing, Nelson gave notice of her intent to present affirmative defenses of self-defense and defense of others.

In December 2024, the parties entered into a plea agreement. Nelson agreed to plead guilty to the offense charged, and the state agreed to recommend a 100-month sentence, a downward durational departure from the presumptive 150-month sentence, and to not charge Nelson's sister with any crimes arising from the incident.

In March 2025, Nelson moved for both a downward dispositional departure and a downward durational departure. In a memorandum, Nelson argued that she is particularly amenable to probation in light of her lack of a criminal record, age, cooperation, attitude in court, remorse, and the support of her family and community. Nelson also argued that a downward dispositional departure is warranted by her difficult upbringing, her overcoming adversity, her caring for family members, and the fact that other persons instigated the incident that led to her crime. Nelson requested a stayed sentence with 364 days in the workhouse or, alternatively, a downward durational departure to a prison sentence of 48 months. The state filed a memorandum in which it opposed Nelson's motions and recommended an executed sentence of 100 months of imprisonment.

In May 2025, the district court conducted a sentencing hearing. The parties presented oral arguments in support of their respective positions. Nelson spoke in allocution by accepting responsibility for her actions, expressing remorse, and apologizing

3

for the harm she had caused. The district court denied Nelson's motion for a downward dispositional departure but ordered a downward durational departure and imposed a sentence of 100 months of imprisonment, consistent with the state's recommendation. Nelson appeals.

**DECISION**

Nelson argues that the district court erred in two ways at sentencing. First, Nelson argues that the district court erred by denying her motion for a downward dispositional departure. Second, Nelson argues that the district court erred by departing downward durationally to 100 months of imprisonment rather than 48 months.

The Minnesota Sentencing Guidelines prescribe presumptive sentences for felony offenses. Minn. Sent'g Guidelines 2.C (Supp. 2023). For any particular offense, the guidelines sentence is "presumed to be appropriate for all typical cases sharing criminal history and offense severity characteristics." Minn. Sent'g Guidelines 1.B.13 (Supp. 2023). Accordingly, a district court "must pronounce a sentence . . . within the applicable [presumptive] range unless there exist identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (Supp. 2023); *see also State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014); *State v. Best*, 449 N.W.2d 426, 427 (Minn. 1989).

The guidelines describe two types of sentencing departures: dispositional and durational. A dispositional departure places the offender in a different setting than that called for by the presumptive guidelines sentence. Minn. Sent'g Guidelines 1.B.5.a (Supp. 2023). For example, a downward dispositional departure occurs when the presumptive

4

sentence calls for imprisonment but the district court instead stays execution or imposition of the sentence. *Id.* at 1.B.5.a.(2). Particular amenability to probation is one of the mitigating factors recognized in the sentencing guidelines as a basis for a downward dispositional departure. Minn. Sent'g Guidelines 2.D.3.a(7) (Supp. 2023). Particular amenability to probation is not established if the defendant is only somewhat amenable to probation. *Soto*, 855 N.W.2d at 308-09. Rather, the defendant must be "*particularly* amenable to probation" in a way that "distinguishes the defendant from most others and truly presents the substantial and compelling circumstances that are necessary to justify a departure." *Id.* at 309 (quotation omitted). In determining whether a defendant is particularly amenable to probation, a district court may consider, among other things, "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982).

By contrast, a durational departure results in the imposition of a sentence that is longer or shorter than the presumptive sentence. Minn. Sent. Guidelines 1.B.5.b. A durational departure must be based on factors that reflect the seriousness of the offense, not the characteristics of the offender. *State v. Chaklos*, 528 N.W.2d 225, 228 (Minn. 1995); *State v. Back*, 341 N.W.2d 273, 276 (Minn. 1983). A downward durational departure is justified only if the defendant's conduct was "significantly less serious than that typically involved in the commission of the offense." *State v. Mattson*, 376 N.W.2d 413, 415 (Minn. 1985). The requirement that aggravating or mitigating factors must relate to the seriousness of the offense—and not to the characteristics of the offender—narrows

the range of factors that may justify a durational departure. *State v. Solberg*, 882 N.W.2d 618, 623-24 (Minn. 2016).

If a district court departs from the presumptive sentence, the district court is required to state the reason or reasons for the departure. Minn. Sent'g Guidelines 2.D.1.c. But if the district court does not depart, the district court is not required to state reasons for imposing a presumptive sentence. *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013), *rev. denied* (Minn. Sept. 17, 2013); *State v. Van Ruler*, 378 N.W.2d 77, 80 (Minn. App. 1985). This court applies an abuse-of-discretion standard of review to a district court's denial of a request for a downward departure. *Soto*, 855 N.W.2d at 307-08 & n.1. Only in a "rare case" will an appellate court reverse a district court's imposition of a presumptive sentence. *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006) (quoting *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981)).

In this case, the district court noted during the sentencing hearing that it had reviewed the presentence investigation (PSI) report and the parties' written submissions. After listening to the attorneys' arguments and Nelson's statements in allocution, the district court expressed agreement that a downward durational departure is appropriate in light of the circumstances of the offense. The district court then stated that Nelson's motion for a downward dispositional departure presented a "much harder question." The district court recognized Nelson's remorse and her good behavior while awaiting sentencing. But the district court stated that it must balance the *Trog* factors with the "horrible loss" of a life. Accordingly, the district court imposed an executed sentence of 100 months of

imprisonment, a downward durational departure from the presumptive sentence of 150 months.

## A.

Nelson first argues that the district court erred by denying her motion for a downward dispositional departure.

Nelson initially contends that the district court did not consider the *Trog* factors. She asserts that the district court "failed to conduct any meaningful analysis regarding the reasons supporting a dispositional departure." Nelson's contention is inconsistent with caselaw stating that, if a district court does not depart, the district court is not required to state its reasons for imposing a presumptive sentence. *See Johnson*, 831 N.W.2d at 925; *Van Ruler*, 378 N.W.2d at 80. A district court is required only to "exercise [its] discretion by deliberately considering circumstances for and against departure." *See State v. Pegel*, 795 N.W.2d 251, 253 (Minn. App. 2011). Nelson cites *State v. Curtiss*, 353 N.W.2d 262 (Minn. App. 1984), in which this court concluded that a district court erred in denying a departure motion by rejecting the defendant's argument without exercising any discretion. *Id.* at 263-64. In this case, however, the record reflects that the district court considered facts relevant to the departure decision and exercised discretion in denying the motion. The district court stated that it had reviewed the PSI report and other written submissions, and the district court specifically referred to Nelson's remorse and good behavior while awaiting sentencing. Thus, the district court appropriately exercised discretion in considering Nelson's request for a downward dispositional departure.

7

Nelson also contends that the *Trog* factors demonstrate that she is particularly amenable to probation. Nelson points to her age of 28, her lack of a criminal record, her remorse, her acceptance of responsibility, her cooperation, and the support of her family and community. If a district court finds substantial and compelling reasons for departure, the district court has discretion to order a downward departure. *Soto*, 855 N.W.2d at 308; *Best*, 449 N.W.2d at 427. In other words, if substantial and compelling reasons for a departure are present, a district court may depart from the presumptive sentence but is not required to do so. *State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984). Given the circumstances of this case, the district court did not abuse its discretion by concluding that Nelson is not particularly amenable to probation.

Nelson further contends that the district court "considered improper factors" when it denied her motion. Nelson apparently refers to a comment the district court made about Minnesota's law concerning handgun permits. The comment was made before the district court stated its reasons for denying Nelson's motion. The district court did not refer back to that issue when stating its reasons for denying Nelson's motion. Thus, the district court did not consider inappropriate factors when imposing Nelson's sentence.

In sum, the district court did not err by denying Nelson's motion for a downward dispositional departure.

**B.**

Nelson also argues that the district court erred by not ordering a more significant downward durational departure. She contends that the district court should have imposed a sentence of 48 months of imprisonment instead of 100 months.

Nelson's argument is based primarily on her contention that her conduct was mitigated by her defenses of imperfect self-defense and imperfect defense of others. "Substantial and compelling circumstances for a durational departure are those which demonstrate that the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Rund*, 896 N.W.2d 527, 532 (Minn. 2017) (quotations omitted). The district court agreed that Nelson had identified a mitigating factor that warranted a downward durational departure. The district court simply did not depart as far as Nelson wished. Nelson does not cite any caselaw in which an appellate court concluded that a district court abused its discretion by not departing far enough downward, and we are unaware of any such caselaw.

Nelson also contends that the district court should have departed further because of her cooperation and her remorse. A durational departure must be justified by an offense-related reason. *Id.* at 533. The supreme court has recognized that, in limited circumstances, a defendant's remorse may be deemed an offense-related factor, but "only if a defendant's remorse . . . bears on a determination of the cruelty or seriousness of the conduct on which the conviction was based." *Solberg*, 882 N.W.2d at 626. In *Solberg*, the defendant's remorse did not satisfy that standard because it consisted merely of "statements of regret during the investigation and the district court proceedings," which did not "lessen[] the impact of the crime on the victim or ma[k]e his crime any less serious." *Id.* Similarly, Nelson's remorse was expressed after the shooting and did not diminish the impact on the victim, who died of the gunshot wounds she inflicted. Similarly, Nelson's cooperation occurred during the investigation and prosecution, after the victim had died.

9

In sum, the district court did not abuse its discretion by ordering a downward durational departure from 150 months of imprisonment to 100 months.

**Affirmed.**